FERDINAND A. HABER AND GUSTAVE OBERBECK, PARTNERS, AS F. A. HABER & CO., APPELLANTS, VS. WILLIAM W. NASSITTS, APPELLEE.

1. The general purpose and intent of the attachment laws is to give the creditor protection and security whenever the debtor is committing certain enumerated acts of fraud, or he is in such a situation as either endangers the debt or impairs the remedy for its collection. They should not be so construed as to prohibit the debtor under all circumstances from engaging in every legitimate species of trade beyond the confines of State jurisdiction.

2. The statute authorizes an attachment whenever the debtor is actually removing his property out of the State. *Held :* That although a case in which there is no bad intent, the transaction is fair, the amount of property being removed in comparison with what remains is small, the debtor is solvent, and the debt is not endangered, was within the letter, yet it was not within the spirit or true meaning of the statute.

Appeal from the Circuit Court for Escambia county.

The case is stated in the opinion of the court.

*Messrs. Mallory and Maxwell,* for Appellants.

The plaintiffs sued out attachment against the goods, &c., of defendant on the ground that he was actually removing his property out of the State of Florida.

The defendant traversed the allegation of removal of property, and thereupon moved to dissolve the attachment. A jury was called, and evidence taken on the issue joined. In the course of the trial the defendant offered to prove that he was not removing his property with any view to defraud his creditors, and that he had sufficient property remaining in the State to pay the debt sued on. To this plaintiffs objected as irrelevant to the issue, but the court overruled the objection ; and in accordance with said ruling afterwards charged the jury that they must find for the plaintiff if they should believe the defendant "was re-

moving his property out of the State," unless they were " further satisfied that it was not done with the intent of avoiding the payment of his debt;" and also, that defendant might "show the fairness of the transaction, unless it should appear from the testimony adduced, against him." The plaintiffs excepted to these and other parts of the charge of the same purport, and asked the court to instruct the jury simply :

First. That if they believed " defendant was removing his property beyond the limits of the State they must find for the plaintiff."

Second. That if they " believed defendant was removing any portion of his property beyond the limits of the State, they must find for the plaintiff"—which instructions the court refused.

The jury having found for the defendant, plaintiffs' attorneys moved for a new trial on four grounds :

First. That the verdict of the jury was against the legal evidence in the case.

Second. That the court erred in admitting evidence not pertinent to the issue and calculated to mislead the jury.

Third. That the court erred in admitting evidence of the defendant on other points than that of removal of the property, viz., as to whether his intention by such removal was to defraud his creditors, or defeat them in the collection of their debts.

Fourth. That the court erred in the instructions given to the jury, and in refusing the instructions asked for by plaintiffs' counsel.

Which motion for a new trial was overruled, whereupon plaintiff excepted.

And now in this court plaintiff assigns for error :

First. That the court below erred in permitting evidence to go to the jury to show the *intent* with which the defendant was removing his property.

Second. In permitting evidence to show the value of property retained by the defendant in the State.

Third. In its instructions to the jury, in so far as these author-

F. A. Haber & Co. vs. William W. Nassitts—Argument of Counsel.

ized the jury to decide upon the intent of the defendant in re-
moving his property, and upon the fairness of the transaction.

Fourth. In refusing the two instructions asked for by plain-
tiffs' counsel.

Fifth. And in overruling the plaintiffs' motion for a new trial.

The questions thus presented to the court involve the proper
construction of that clause of the statute which authorizes the
writ of attachment in case a party owing a debt "is actually re-
moving his, her, or their property out of the State."

The statute provides that the claimant shall make oath " that
he or she has reason to believe the party from whom it (the
debt) is due will fraudulently part with his, her, or their property
before judgment can be recovered against him, her, or them (as
the case may be), or is *actually removing his, her, or their prop-
erty out of the State of Florida*, or about to remove it out of
the State, or resides beyond the limits thereof, or is actually re-
moving or about to remove out of the State, or absconds or con-
ceals himself or herself, or is secreting his or her property, or
fraudulently disposing of the same." See acts 9th, adjourned
Sess., 16, 17.

Very obviously, the clause in question requires, by its own
terms, no other fact to be proved than that the debtor is *actually
removing his property out of the State*. There is nothing said
about his intention, nothing about his object, nothing about
the fairness of his act of removing the property. Nor is there
anything of this kind left to inference. The words stand there,
fully expressing in themselves, plainly and absolutely, the con-
tingency in which the creditor *will* be entitled to the remedy
provided by the act. A debtor is actually removing his property
out of the State; it may be but a small portion of it, or a larger,
or the whole; the only questions are, is it *his* property, and is he
*actually removing* it out of the State?

Go a step further, and inquire whether the intention of the
Legislature is defeated or imperfectly carried out, by thus re-
stricting the clause to the plain import of its words. What was

that intention? Certainly not to protect the creditor against the *fraudulent* designs or acts of the debtor, for that was sufficiently done by other clauses of the act. Nor to protect him against the "intent (of the debtor) of avoiding the payment of his debt," as charged by the judge below, for then he could not have the writ even if the debtor were *removing the* whole *of his property*, if he were not removing it with such intent; and the Legislature cannot be supposed to have meant any such thing as that. Then, what did it intend? Simply, that the creditor should have the authority to arrest the removal of the debtor's property beyond State jurisdiction; that the debtor should not seek to put it beyond that jurisdiction, except at the peril of having it summarily attached. If the intention had been broader, if it had been to guard against the *wrong designs* of the debtor, why were no words used to express it? Why leave it wholly to inference? Why say actual removal of property should authorize the writ, and say no more, when the meaning was that its removal should *not* authorize the writ, unless made with this or that intent? This is altogether unreasonable, and must be admitted to be so, when it is seen that bad intent is provided against in other clauses of the act. The court will not put such a stigma upon the Legislature as to hold that that body used words definitely expressing a certain purpose, when in fact *its* purpose could only be reached by constructively adding other words which changed, as much as they enlarged, the meaning of those actually used.

To show that the intention of the Legislature could not have been what is contended on the other side, it is only necessary to refer to the analogous clause of the act, which authorizes attachment when the debtor is "actually removing, or about to remove, out of the State." It will not be pretended that in such a case the court will permit an inquiry as to his intent, or permit him to show that he has ample property left in the State as well as where he is going, or show anything else which goes to prove that his object is not to defeat his creditors. It will be

F. A. Haber & Co. vs. William W. Nassitts—Argument of Counsel.

enough that he is actually removing, or about to remove, out of the State. Taking this to be indisputable, why should the debtor be permitted to show that he is acting fairly in the removal of his property in a case such as that now before the court, any more than in the case of the removal of the person, when the language used for both cases is the same.

All that the law requires, is to know in the one case whether the debtor is actually removing his property out of the State; and in the other, whether he is actually removing himself. What constitutes "removing," in the sense of the Legislature, may admit of some question, but that once determined, the proof must go only to that point. It seems that the Legislature meant a "removing" in the popular sense as applied to a person. To say a man is "removing" to another State, is understood to imply that he is going there to remain; and, doubtless, that is the sense in which it is used by the Legislature when it authorizes attachment against a person who is "removing out of the State." A visit to a friend across the State line would not be removing. And I see no reason why the Legislature may not have intended the same sense to the word in its application to property; and hence would not consider a man as being in the act of "*removing*" his property, (a horse, for instance,) when he was merely riding him into another State on a visit of pleasure or business. The fact of "removing" would not exist in such a case; and this is the fact the act requires to exist and be proved, which is quite apart from any fact about other property, or any fact relating to the intent of the debtor towards his creditors. If intent be open to inquiry at all, it would be with a view to negative this fact of "removing" the property, because upon this the whole proceeding rests. This does not open the door for further inquiry as to intent of the debtor in other respects, for to show intent in order to prove that a man is not removing his property out of the State, when that is the fact to be proved, has not the slightest relation to intent which goes to prove some other fact, not required to be proved.

The construction I have given of this clause is confirmed by the history of the legislation of the State on the subject. This clearly shows the policy to be more and more to favor the creditor. Up to 1859 the law gave the writ, when the debtor " is actually removing out of the State, or resides beyond the limits thereof, or absconds, or conceals himself, (so that the ordinary process of law cannot be served upon him,) or is removing his property beyond the limits of the State, or secreting, or fraudulently disposing of the same (for the purpose of avoiding the payment of his just debts.") See Thomp. Dig., 367. This was amended by the act of 1858–9 so as to add to the grounds for attachment the case where a debtor is " about " to remove his property out of the State, and also by leaving out the words " so that the ordinary process of law cannot be served upon him," evidently intending to make the law more stringent against the debtor, enlarging the remedy of the creditor, and lessening the restrictions upon him by striking out the words last quoted. See Pamph. Acts 9th, Sess. 27. Next comes the act of 1859, now in force. That still further enlarged the grounds for attachment, by allowing it in a case where the creditor " has reason to believe the party from whom the debt is due will fraudulently part with his, her, or their property before judgment can be recovered," &c., and also allowing it in a case where the debtor is " *about* to remove (his property) out of the State ;" and lessened the restrictions upon the creditor by dropping the words, " for the purpose of avoiding the payment of his just debts." See Pamph. Acts 9th, Adjourned Sess., 16, 17.

Now, the holding of the words of the clause in controversey to their obvious import, accords with the policy of the Legislature to favor the creditor in his remedy. Besides, when by the first and second acts the writ was allowed when the debtor was " removing his property beyond the limits of the State, or secreting, or fraudulently disposing of the same for the purpose of avoiding the payment of his just debts," was not that " purpose " a necessary ingredient in each of the contingencies speci-

F. A. Haber & Co. vs. William W. Nassitts—Argument of Counsel.

fied, and made so by a proper reading of the whole clause? And if so, why were these words, "for the purpose of avoiding the payment of his just debts," dropped from the last act? Clearly, this was done in order to dispense with the necessity of inquiring into the purpose. But even if these words are to be taken as disconnected with the first member of this clause, relating to the removal of property, it is not less significant that they should have been dropped from connection with the other portions of the clause. It only showed most palpably that the Legislature did not intend, even where it had been before required, that there should be inquiry as to the "purpose" or "intent" of the debtor respecting his debts. Why else should they have been stricken out?

And if inquiry cannot be made into his purpose or intent, wherefore and by what authority will inquiry be made into the amount of the property he may have remaining in the State. If that be done, inquiry must be made as to his debts also. But the act has nothing to direct or authorize either, and it is obviously against the policy which dictated its passage that any such inquiry should be made.

The act thus construed would apply to any removing of property out of the State, whether in the course of trade or otherwise, so it be actual removing, as already explained.

But it is said, such a construction would work great hardship upon the debtor in certain cases. If this be true, the reply is, that it is the fault of the Legislature—not of the law. The hardship is not admitted, however, as the debtor cannot justly complain that the arm of the law constrains summary provision for obligations he has neglected or failed to meet, and the security for which he is lessening by transfer of property to another State.

Take the reverse view of hardship. Is it reasonable to suppose that the Legislature meant to impose upon the creditor the necessity of waiting, where his debtor is actually removing some of his property, until he shall find that only enough is remaining

to satisfy his debt? If so, when should he move? How long shall he wait? How much must be removed before he can have his writ? There might be ample property, but there might also be debts fully equivalent. Shall the creditor be stayed until he pries into all the business of the debtor, and ascertains accurately the proportion between his debts and property? If neither of these things be required, where is the line to regulate his action? Evidently not a line the law fixes, which should be definite, but a loose and shifting one, depending upon the ingenuity with which a debtor can hide his affairs and purposes. Now, did not the Legislature, by its last amendment of the statute, manifestly intend to remove all doubt as to the line, fixing it definitely and restrictively on the simple act of removing the property? To permit a more enlarged scope, places the right of the creditor in hopeless confusion and uncertainty. He could never know when the writ was allowed to him; and even if the debtor were removing his whole property, if the intent is to enter into the gist of his act, there might be proof to show the " fairness of the transaction," which, according to the charge of the judge below, would be fatal to the creditor.

It is sought to influence the court by decisions on the statutes of other States. But this court will give effect to the Florida statutes according to the intention of the Florida Legislature, and when cited to other State decisions, will require to be told how the purposes and policy of those States, as well as the language of their acts, correspond with those of this State. The citations of defendant's counsel from decisions in Louisiana, Illinois, Mississippi, and Tennessee, as given in Drake on Attachments, will be of little service to him, unless he can show that the statutes of these States, in their whole scope, as well as in the language of this particular clause of our statute, are of the same purport. What we have seen gives little light on this subject, and if the court is not more fully informed than by Drake, it will not acccept as binding authority what is by him quoted, in the absence of a comparison of the entire of those statutes with ours.

But the case cited from Louisiana, Russell vs. Wilson, Drake, 69, and the case from Tennessee, Rungum vs. Morgan, Drake, were cases resting upon the intention of the debtor as to "actually removing" his property; and the decision would evidently have been different if it had appeared that the property, though in the ordinary course of its use taken back and forth, was then being "removed"—that is, taken out of the State not to be brought back; and in such a case, it is not believed those courts would have permitted any inquiry as to whether such actual removing was or was not for the purpose of defrauding or defeating creditors.

In the Illinois cases, the statute in terms related to removing "property out of the State *to the injury of the creditor*," thereby requiring such injury to be proved. There is nothing similar to our statute, and therefore the cases do not apply here.

The Mississippi case, as rendered by Drake, page 70, may be in conformity with the decision of the court, but I cannot concede it as good authority; and if good in that State, it must be because her statute policy on the subject is different from that I have shown to be the policy of Florida. Having respect for that court, I am bound to presume this is the case. But I have not access to the Mississippi statutes, and cannot advise the court in what their policy agrees or differs from those of Florida. The construction given to language which corresponds to that of our act, by which the language lags far behind the law as announced, may be explained by other portions of the statute not adopted here. However that may be, this court will not feel itself bound to follow an authority whose decision upon the law of another State is not in conformity with the proper construction of a similar law of Florida.

Relying upon the correctness of the law as I have presented it, its application to this case will entitle the plaintiffs to a new trial of the issue joined below. The fact that defendant was removing goods of his out of the State is proved and admitted by himself. The circumstances under which this was being done,

were enough to excite the suspicion of his creditors. He was failing to meet his commercial paper—he was selling goods at auction by night and by day—he was sending other goods out of the State, mixed up with goods of another party (Frank) in such a way that all the goods were believed to be his own, although, as they themselves afterwards show, defendant was only sheltering Frank's from the reach of creditors. He had been but little over a year in business, and excuses non-payment of weekly instalments on his debts, by saying it took all he could make to pay expenses. A comparative stranger, who could know what he had or owed? With no established reputation, is it strange that such conduct as his should have led to the belief which would prompt creditors to avail themselves of the most summary law allowed them against him?

But, though his creditors may have misconstrued his conduct, he nevertheless did what by the law subjected his property to attachment, of which the record shows sufficient legal evidence, if our construction of the statute is correct, and he is not therefore entitled to have the attachment dissolved.

*C. W. Jones*, for Appellee.

The questions presented for the determination of the court in these cases are identical in every respect. The suits were commenced by attachment under the law of 1859, and the grounds for the attachment are : "That defendant is removing his property beyond the limits of the State of Florida." The defendant traversed this allegation in the plaintiffs' affidavit ; a jury was empanelled to try the issue thus made, when, after hearing the evidence and the charge of the court, found for the defendant, and the judgment of the court was, in all these cases, "that the attachments be dissolved." A motion was then made *pro forma* for a new trial upon the grounds stated in the record, which was refused by the court, and thereupon the plaintiffs appealed to this court.

The principal ground upon which the counsel for the appellant insist that the judgment should be reversed is, that the court erred in its construction of the law of 1859, in accordance with which these suits were instituted.

It is insisted that, under this law, it matters not what may be the character of the removal of property as to its value or the intent which prompted its transmutation ; if the debtor is in the act of removing *any* property to an adjoining State, an attachment will lie against his estate, no matter how honest may be his purpose, or how much he left behind as security for his creditor. That the law prescribes the ground which must exist before an attachment issues, and that as the law does not require any bad intention to be charged in the affidavit in this case, or require the plaintiff to state negatively that the defendant has left no property in this State as sufficient security for his creditor, that then these matters could not properly enter into legal consideration in determining the issue, " whether the defendant was removing his property or not." That as the judge left it to the jury, under all the circumstances as they appeared in evidence, to say whether or not *this removal* was intended to affect the creditor in any way injuriously, that he erred, and should have charged that any removal of property, on the part of the defendant to another State, without regard to intent, quantity or circumstances, authorized the attachment. This is the law as insisted upon by counsel for the appellants, and the denial of which is assigned as error.

The law as found in the statute book is, that in case where oath is made that the party defendant is *actually removing* his property beyond the limits of the State, an attachment shall issue, &c., &c.

Now can it be seriously insisted that these words in the Act of 1859 must be taken without any limitation whatever ? Will any removal of property, however insignificant, casual, or honest, come within the meaning of the law ? If it be admitted that there must be some reasonable limitation to the words of

this act, then there is an end to the controversy; for, if the law admits of any construction at all, the construction of the court below is the only one that could well be given to it. Would the law in question apply to the removal of merchandise out of State in the regular course of trade? To the shipment of articles manufactured here for a market abroad, and where alone such articles would command any reasonable price? Would it he held to apply to the casual *removing* of the horses and carriage of a citizen upon a visit to a neighboring State?

If, as insisted upon by counsel, it is not competent to look to the intention of the party or character of the removal, then, in all these cases that I have mentioned, an attachment might be sued out, notwithstanding the defendant had more than sufficient property within the State to secure his creditor.

Was this *law intended* to create such great hardships as would arise in such cases, by not *allowing* the defendant under any circumstances to show, in defense, the character of the removal?

In this case the defense is, that defendant was removing the property in the course of trade, and not with the view or intent of injuring his creditors. The proof satisfied the jury that such was the fact; that he had $12,000 worth of goods behind unremoved, and that the removal of the three cases of merchandise to Alabama was in consequence of the extreme dullness of trade in Pensacola.

If the court was right in leaving the matter of the defendant's intention to the jury, in regard to this removal, as we insist it was, then there can be no questions made as to the right of the jury to find as they did in this case. If the court below took the correct view of the law, it was eminently proper for the jury to be informed by legal evidence of the entire character of this removal of property—the amount actually being removed, the estate which the defendant had in Florida not being removed, the object of the party in carrying off the goods, as expressed at the time or derived from circumstances. These

matters were allowed to be given in evidence, as shown by the bill of exceptions. The jury having the whole subject before them, under the charge of the court, concluded that this removal of property did not in any way affect the security of the creditor, and they dissolved the attachment.

" The principle upon which the statute proceeds is *the danger of loss* of the debt by the removal of the defendant's property." When the reason of the law ceases, the law itself should cease.

I shall endeavor to support the views of this brief by the highest judicial authorities.

In Louisiana, under a statute authorizing an attachment where the debtor is about to remove his property out of the State before his debt becomes due, it was decided that the statute must be understood to apply to property which the creditor might have supposed would not be carried out of the State, and to which he might have looked for his security at the time of contracting or since ; but that he would be unreasonable to extend it *to a species* of property, which from *its nature* and destination, must necessarily be taken out of the State, and which the creditor could not have believed would remain continually within it.

Therefore, where a debtor was the owner of a steamboat, which he had purchased from the plaintiff, and for part of the purchase money had given his notes, which were not due, it was held that the fact of the defendant being about to remove the boat *out* of the State in course of regular trade, *without any fraud or intention to defraud being alleged*, was not sufficient to justify an attachment on the ground stated. Russell vs. Wilson, 18 Louisiana, 367. See Drake on Attachments, 3d edition, side page, 69.

The court will observe that the law of Louisiana above cited, like our own statute under consideration, is silent as to *fraud* or *intention* to defraud on the part of the debtor, and yet the court held, that unless something of this kind was alleged or shown by the creditor, that the attachment could not be maintained or upheld.

In Illinois, where the statute authorized an attachment when the debtor " is about to remove his property out of the State to the injury of his creditor," an attachment was obtained on that ground against two debtors, and levied upon a quantity of pig-iron, which was all the personal property owned by the defendants in the county at the time the writ was issued. The defendants traversed the allegation of the plaintiff's affidavit. On the trial, one of the defendants offered to prove that he owned a large amount of personal property, free from incumbrance, within the State, and which was more than sufficient to discharge the plaintiff's demand. The court below excluded this evidence, but the Supreme Court held this to be error, and that the evidence was admissible. White vs. Wilson, 10 Illinois, (5 Gilmore.) Page 21, Ridgeway vs. Smith ; 17 ibid., 33.

But the case which is most analogous to that now before the court is the case of Montague vs. Gaddis, 37 Mississippi Rep'ts, 453. In this case, the language of the statute appeared to be in the exact words of our own law. There an attachment was obtained on the ground that the defendant was " about to remove his property out of this State." The defendant plead in abatement, denying the allegation in the affidavit. On the trial under this plea it appeared that the defendant, in pursuance of a previously explained purpose, had removed a part of his property to Louisiana, but that at the time of the attachment he had, in Mississippi, real and personal property more than sufficient to pay his debts. The court held that the attachment would not lie, and used the following language in stating the grounds of its decision :

" The object of the statute is to secure to the creditor security for his debt, in case the debtor is about to remove his property out of the State, to deprive the creditor of the collection of his debt in this State. The principle upon which the statute proceeds, adds the court, is the danger of loss of the debt by the removal of the defendant's property, and this reason fails, and the remedy provided by the statute plainly does not apply,

when the debtor is *removing* a part of his property, but does not remove or intend to remove another part of it, subject to the payment of the debt, amply sufficient to satisfy it and accessible to the creditor's execution, and such portion of his property remains in his possession openly subject to execution. For when property to such an amount, and so situated, remains in the possession of the debtor, and is not about to be removed from the State, it could not be justly said that the creditor's debt would be in danger of being lost by the removal of another part of the debtor's property from the State." See Drake on Attachments, 3d edition, side page 70.

So in a case which arose in the State of Tennessee, where the law allowed an attachment where a debtor "is removing or about to remove himself or his property beyond the limits of the State." An attachment was obtained against the owner of a steamboat, on the ground that he was about to remove the said steamboat beyond the limits of the State. "The court intimated that the designation of only a particular piece of property as about to be removed, if it stood *alone*, would not be sufficient to authorize an attachment; and that the affidavit should exclude the idea that other property might still be left by the defendant within the jurisdiction amply sufficient to satisfy the demand. But as the attachment was applied on the ground that the court regarded the allegation in the affidavit as equivalent to the assertion that the defendant was about to remove himself." Kungum vs. Morgan, 7 Humphreys, 210.

I think these authorities undoubtedly settle the point in favor of the appellee, that the words "removing his property beyond the limits of the State" are not to be taken without any limitation whatever.

I therefore insist that there is no error in the admission of the testimony of Nassitts and Frank, which went to show the amount of property removed or being removed, and the amount of property which the appellee had within the State. That the charge of the court leaving it to the jury to say whether, under all the

circumstances, the removal of the goods in question was intended or did affect the security of the creditor, is also free from error. These are the only two questions which can reasonably enter into the consideration of the court in this case.

The objection that the verdict is against the weight of evidence, is without foundation. There is nothing in the record to show that anything stated by Nassitts and Frank was untrue. There is not the least discrepancy between their testimony and that of the witnesses for the plaintiffs in attachment. It was clearly proven that *only* three of the boxes of merchandise seized by the sheriff belonged to the defendant, and that the remainder belonged to the witness Frank. It has been attempted to destroy the effect of this testimony by inference of fraud, and an attempt to show all the goods belonged to the defendant Nassitts. This conclusion is drawn from the tardiness of Frank in coming forth and claiming his part of the goods after they were seized by the sheriff as the property of Nassitts. The sheriff, however, became satisfied that the goods contained in twelve boxes belonged to Frank, and they were restored to him, and the defendant Nassitts voluntarily supplied the deficiency in the levy, by giving the officer, out of his stock in store, other goods in their place and of equal value. The jury understood very well the apparent tardiness of Frank—his putting the goods in Nassitts' store when they were first purchased, and all his subsequent conduct. They understood very well, that every thing that appeared in evidence, in regard to the ownership of the boxes, was perfectly consistent with the right of property in them set up by Frank. To them belonged the duty of weighing the evidence, and while in ordinary cases it would appear difficult to reconcile the right of property in these goods as set up by Frank, with their intermixture with the goods of Nassitts— yet they *knew* that Frank *had* an object to accomplish in all this, and *that* was to keep *these* goods from being exposed to his own *creditors*. This is the key and secret of all the mysterious conduct of Frank in reference to these goods. That the twelve

boxes belonged to him, and three boxes to Nassitts, there can be no doubt. Nassitts had no concealments to make. His stock in trade in Pensacola, valued at $12,000, was in his own name and open to his creditors. Why should he seek to make it appear that the goods contained in the twelve boxes belonged to Frank and not to himself, if they really did not ? The sworn testimony of the party owning the goods is in the record. Had not the jury the right to accept the positive sworn testimony of the witness in preference to the presumption of fraud, drawn from doubtful circumstances, as insisted by the counsel for appellants ?

WESTCOTT, J., delivered the opinion of the court.

This was an action of assumpsit. An attachment was issued therein based upon an affidavit assigning as cause that the defendant " was actually removing his property out of the State of Florida."

The defendant, seeking a dissolution of the attachment, tenders an oath to the court putting in issue the "special cause assigned," and thereupon moves a dissolution. Evidence is heard upon the issue thus presented. The plaintiff requests the court to charge the jury thus:

First. " If the jury believe the defendant was removing his property beyond the limits of the State they must find for the plaintiff."

Second. " If the jury believe that the defendant was removing any portion of his property beyond the limits of the State they must find for the plaintiff."

Which was refused, and the jury instructed as follows:

" If in this case you believe, from the testimony, that the defendant at the time of suing out the attachment was removing his property out of the State of Florida, you should find for the plaintiff, unless you are further satisfied that it was not done with the intent of avoiding the payment of his debts. It will

be sufficient on this issue for the plaintiffs to prove that the defendant was removing his property out of the State, and it will be incumbent on the defendant to show the fairness of the transaction, unless it should appear from the testimony adduced against him. It will be competent for you to consider all the facts proved before you in determining as to the intent of the defendant in the transaction, and if you believe that it was to avoid the payment of his debts you should find for the plaintiffs. It is not necessary that the defendant should have been removing all his goods, but if the testimony satisfies you that he was removing any of them out of the State with such intent, you should find for the plaintiffs, for the plaintiffs would not be required in such a state of circumstances to wait until all the goods were removed or being removed." The rest of the charge relates to the weight to be given to " circumstantial testimony," and it is unnecessary to repeat it, as no exception is urged to that portion of the charge. To the refusal of the court to give the instructions prayed, as well as to the instructions given, the plaintiffs by their counsel excepted. Upon a verdict for the defendant there is a motion by plaintiffs for a new trial upon the following grounds:

First. The verdict of the jury was against the legal evidence in the case.

Second. The court erred in admitting evidence not pertinent to the issue, and calculated to mislead the jury.

Third. The court erred in admitting evidence of the intention of the defendant on other points than that of removal of the property, viz., as to whether his intention by such removal was to defraud his creditors or defeat them in the collection of their debts.

Fourth. That the court erred in the instructions given to the jury, and in refusing the instructions asked by the plaintiffs' counsel.

This motion is overruled, the attachment is dissolved, and upon the entry of a judgment for the defendant an appeal is

prayed and allowed, and the appeal being now here for a hearing, we have an assignment of errors as follows:

First. That the court below erred in permitting evidence to go to the jury to show the intent with which the defendant was removing his property.

Second. In permitting evidence to show the value of property retained by defendant in the State.

Third. In its instructions to the jury, in so far as these authorized the jury to decide upon the intent of the defendant in removing his property, and upon the fairness of the transaction.

Fourth. In refusing the two instructions asked for by plaintiffs' counsel.

Fifth. In overruling the plaintiffs' motion for a new trial.

This is a very important case, and it has received much thought and consideration. The first conclusion which our minds have reached with confidence is that it cannot go off upon any literal and absolute construction of the terms "actually removing his property beyond the State," as is insisted by appellant. The words are, "actually removing his property," and upon the face of the statute these words do not plainly and absolutely negative the idea that an actual removing of the *whole* of his property is not intended rather than the actual removing of a *part* of his property, or *vice versa*, or that both and either is not embraced in the terms used.

The plain result from the context is that at the threshold we are met with many inquiries. For instance: Does the statute intend a removal of a *part* of the property of the defendant? Does it mean a removal of the whole of his property? Does it embrace both? Does it embrace a removal with an intention to return? Is the removal intended only a permanent removal, or does it as well include a removal *animo revertendi*—such a removal as attends a mere visit to a neighbor across the State line, in which the carriage and horses of the defendant pass the line, and in which his intention is to return, perhaps in a day, with his property. Is the property here meant every species

of property? Does it embrace a steamboat which at the time the debt was contracted was engaged in the usual business of trips beyond the State, and when the defendant has done nothing to impair the debt, and everything is in the same condition it was when the debt was contracted? Does it embrace a bill of exchange purchased by a local merchant and transmitted by mail to his agent in New York or Charleston with directions to collect and apply to his indebtedness at that point? If so, this is a removal of property beyond the State never to return, and the creditor, assuming that only a part of his debt was paid, could take out an attachment against his debtor for doing nothing more in fact than paying a part of this identical debt.

We do not propose to determine these questions only so far as they are involved in this case, and they are here stated only to show that it will not do to say that these words express plainly and absolutely what shall constitute a removal or what is indicated either in amount or character by the words "*his property*." While the able counsel for appellants agree that it is not every removal that is within the meaning and spirit of the act, and is willing to let the ordinary rules controlling the construction of statutes operate to give this term definition, yet these same principles cannot, it is insisted, be invoked in the dilemma presented by the statute on its face in the use of the terms "*his property*" in the connection in which they stand, and the argument is that these terms include all and every species of property irrespective of amount or character, and independent of the general intent of the statute; that such is the literal construction, and that such is the only construction which can be given consistent with what is claimed to be the manifest legislative policy of the State.

A brief inquiry into the history of attachment proceedings will enable us to ascertain with more certainty what is the general purpose, intent, spirit, and effect of these statutes.

No such process was known at common law, and the proceeding is traced to a custom of London whereby "if a plaint was

affirmed and was returned *nihil*," the plaintiff had a garnishment against debtors of the defendant, and after certain proceedings was entitled to judgment. Under these proceedings, without personal service upon the defendant, debts due the defendant which were not subjects that could be reached by a *fi. fa.* at law, were subjected to his claim. In this and most of the other States, while the remedy extends to subjecting debts due the defendant by process of garnishment as under the custom, it is more comprehensive, extending not only to such sums as may be due the defendant, but making equally subject to its grasp the entire real and personal estate of the defendant, except in so far as local exemptions may protect it, with the additional difference, too, that here there must be either actual or constructive service of the defendant before judgment.

It is a special proceeding at law in the nature of a proceeding *in rem*, giving an extraordinary remedy to the creditor when the debtor is guilty of any act which manifests fraudulent intent, or has a tendency to impair the debt, or to postpone or delay proceedings at law for its collection, or when on account of non-residence or other enumerated causes, personal service of process cannot be accomplished; thus in effect making the property of the debtor the means through which not only notice is often given of the suit, but by which ultimately, through the instrumentality of a judgment, the claim is satisfied. These particular facts or causes are as various as the views of the Legislatures of the several States, and are such as the different interests of commercial or agricultural communities may, in the judgment of those who make laws for them, require. There is one thing, however, which may be said of this legislation, and which is true of every statute as interpreted by the judiciary, which is, that when there is no concurring fact which operates to delay or endanger the debt, or impair the means of its payment, by decreasing the amount of property within the jurisdiction, or some such like thing, *the simple fact that the debt is due is never held sufficient.* Take the fact of non-resi-

dence.  Here the debtor is beyond the jurisdiction, while his property is within the jurisdiction of the creditor, and we have combined two facts: first, the debt is due; second, there is no remedy within the jurisdiction where there is property.  Service cannot be be perfected at law, except through this *quasi* proceeding *in rem*.  These facts otherwise operating to postpone the collection of the debt and to send the creditor to the jurisdiction of the debtor, unless he has a lien which can be enforced in equity, the remedy by attachment at law is given generally against non-resident debtors.  It is for reasons very like unto those above stated, that a remedy is given where the party is about to remove out of the State, because the natural result of such an act, under ordinary circumstances, is to place the creditor in a position differing from that which he occupied when the debt was contracted—such a position as hinders its collection, or otherwise operates to the detriment of the creditor on account of a threatened removal of the debtor's person beyond the jurisdiction.

To give the terms "removing his property out of the State" a strictly literal construction, independent of the intent as well as of the effect of the removal proven in each case, would be inconsistent with the principles which have obtained in the construction of similar statutes in other States.

To admit that the statute covers a case where there is no bad intent, where there is perfect fairness, and where the amount of the property being removed, in comparison with what is left behind, is very small, and the debtor is entirely solvent, and the removal is in the ordinary course of trade, is to change entirely the character of the statute.  It is a remedial statute, and it should be so construed as to correct the evils which brought it into existence, and not to create a greater evil by interdicting every species of legitimate trade beyond the confines of State jurisdiction, under the penalty of giving every creditor an absolute lien, with a swift and sure remedy for its enforcement, against a debtor guilty of no act either wrong in intent or prejudicial in

effect. Such a construction as this would result in the imposition of a penalty rather than give a remedy for a wrong, that penalty being the creation, by legal process, of a lien upon the property of the debtor in favor of the creditor, for an act which is attended by the utmost fairness, and which does not impair the security or delay the remedy of the creditor. This would be to make the law rather a penal than a remedial statute, and while operating to give some additional security to the creditor, its essential characteristic would be the creation of a lien as a penalty.

Such construction ought to be put upon a statute as best answers the intention the makers had in view, and that intention is to be collected from the cause or necessity of making it. Can it be said that the results of acts that could in no reasonable degree impair the remedy or security of the creditor was the cause of this statute? Is the necessity which gave origin to it a necessity for giving every creditor a lien upon the property of his debtor? for such *pro tanto* must have been the view of the Legislature if you permit the lien to be created in the absence of any act which changes the relation of parties, or impairs securities, or manifests unfairness, or delays remedies. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, (Plowden, 366) and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers. Plow., 18.

The construction of no other statute has afforded more ample illustration of the propriety and necessity for these two principles of construction than the attachment law. In Virginia, for instance, where the act authorizes an attachment "against a person who is not a resident of the State," we have this case: W., living in Virginia, having determined to remove to another State, leaves the place where he has resided, and departs for the place where he intends to reside. He is held to be a non-resident of the State when he commences his removal, and before

he gets beyond the limits of the State of Virginia, within the meaning of the attachment law.   12 Gratt., 440.   Other cases illustrating this principle are 15 Missouri, 657; 5 Conn., 117; 20 Penn., 144.

· As illustrating the application of the second principle of construction we have two cases in point—one in Louisiana and the other in Mississippi; the last being a case in which the terms "removing his property out of the State" were defined and construed.   The statute in Louisiana authorized an attachment where "the debtor is about to remove his property out of the State before the debt becomes due."   It was held that the fact that the defendant was about to remove a steamboat, his property, out of the State, engaged in her regular trips, was not sufficient where there was no fraud or intended fraud.   18 La., 367. This act was certainly within the letter of the statute, and it was as clearly not within its true meaning or intent.   It did not come within the mischiefs for which the statute intended to provide a remedy.

In Mississippi an attachment was sued out, and the ground assigned was that the defendant "was about to remove his property out of the State."   "It appeared that the defendant, in pursuance of a previously expressed purpose, had removed a part of his property to Louisiana, but that at the time of the attachment he had in Mississippi real and personal property more than sufficient to pay all his liabilities in that State, which he did not remove or intend to remove."   The attachment was dissolved, and the court say: "The object of the statute is to afford to the creditor a security for his debt in case the debtor is about to remove his property out of the State so as to deprive the creditor of the collection of his debt in this State.   The principle upon which the statute proceeds is the *danger of the loss of the debt by the removal of the defendant's property*, and this reason fails and the remedy provided by the statute plainly does not apply where the debtor is removing a part of his property but does not remove or intend to remove another part of

it, subject to the payment of the debt, amply sufficient to satisfy it, and accessible to the creditor's execution. For when property to such an amount and so situated remains in the possession of the debtor, and is not about to be removed from the State, it could not be justly said that the creditor's debt would be in danger of being lost by the removal of another part of the debtor's property from the State." 37 Mississippi, 457; 7 Humph., 210.

While these attachment statutes are almost as various as there are States in number, it will be noted as a general rule that there is great unanimity in the judicial construction of like provisions in them, and that the strict letter of the statute is, as a general rule, made to yield to its general purpose and intent, which purpose is nowhere held or intimated to be to give a creditor a lien because his debt is due, and to subject the debtor to the penalty of having a present incumbrance upon his estate simply because his debt is due and he permits it to remain unpaid. This is the result of the doctrine urged by appellants when submitted to the test of close analysis. The able counsel for the appellants in this case admit that the case in Mississippi is in conflict with their view that "*the only questions are, Is it his property, and is he actually removing it out of the State?*" but it is insisted that while that case may be good authority under the Mississippi statute, it cannot be so here, because "the statute policy" of Mississippi is different from the statute policy of Florida. Is this correct? The attachment law of 1845 in this State gave the remedy when the debt was actually due and the party from whom it was due was actually removing out of the State, or resided beyond the limits thereof, or absconded or concealed himself so that the ordinary process of law could not be served upon him, or was removing his property beyond the limits of the State, or secreting or fraudulently disposing of the same for the purpose of avoiding the payment of his just debts.

The present law gives the remedy when the debt or sum demanded is actually due, and upon affidavit that the party has

reason to believe that the person from whom it is due will fraudulently part with his, her, or their property before judgment can be recovered against him, her, or them, or is actually removing his, her, or their property out of the State of Florida, or about to remove it out of the State, or resides beyond the limits thereof, or is actually removing or about to remove out of the State, or absconds or conceals himself or herself, or is secreting his or her property or fraudulently disposing of the same.

It is thus seen that in the new statute the words "so that the ordinary process of law cannot be served upon him," are omitted after the words "absconds or conceals himself," and the words "for the purpose of avoiding the payment of his just debts" are omitted from the last clause of the old statute.

The purpose of the Legislature in the first omission was simply to dispense with any inquiry as to whether a party who had absconded or concealed himself had so absconded that the ordinary process of law could not be served, and its purpose in the last omission was simply to obviate the necessity of proving that the sole purpose of a party who was removing his property from the State, or secreting or fraudulently disposing of it, was to avoid the payment of his just debts. That is to say, when it was established that the party was actually removing his property out of the State, under the old statute it was necessary to go further, and to allege and prove its purpose to be to avoid the payment of just debts; while under the new statute, whatever might be its purpose, if the removal endangered the debt of the creditor, or was made with wrong intent, it was such a removal as came within the statute, and to this extent was the remedy of the creditor extended. Besides, the Legislature, no doubt, conceived that proof that the purpose of a *fraudulent disposition of property* was to *avoid* the payment of a just debt was unnecessary, as it would be difficult to establish a *fraudulent disposition* when the purpose was to *accomplish* the payment of a just debt; that is to say, this clause in the old law, so far as the secreting and fraudulent dis-

position of property was concerned, was entirely useless and improper. It is doubted whether those terms in the old statute qualified the words "removing his property beyond the limits of the State;" indeed, a correct construction of the sentence makes them qualify and limit only the terms "secreting or fraudulently disposing of the same;" but this is immaterial, as in either event the conclusion reached by appellants is not the legitimate result or effect of the modification.

How is it with the statutes of Mississippi?

They provided for an attachment upon the ground of a removal of property out of the State by the debtor, and in addition to this there was a special clause in the law requiring that the "act should be construed in all courts of judicature in the most liberal manner for the detection of fraud, the advancement of justice, *and the benefit of creditors,*" and a careful examination of the attachment statutes of that State will show a "statute policy" certainly not behind this State in manifesting an intent and purpose to advance the interest of the creditor, and to secure to him remedies in all cases where there is any danger to his debt.

We are clearly of the opinion that the giving of such a construction to the statute as appellants contend for, would be inconsistent with every adjudicated case which reaches the question, as well as opposed to the manifest spirit, purpose, and intent of the statute.

Having thus taken a general view of the statute, it only remains to apply these principles to the special matter of this case.

It appears that one Simon H. Frank, the agent of a person living in Michigan, and the defendant, were doing business as merchants in Pensacola, both occupying the same store, the daily sales of the goods of Frank being returned to him "every night," each of the parties selling the goods of the other as called for.

During a temporary absence of the defendant in an adjoin-

ing county, Frank packed up his portion of the goods and removed them from the common store-house with the intention of removing them to Pollard, Alabama. Subsequently, as Frank's stock was incomplete, he proposed to the defendant that he should add some of his goods and complete the assortment of stock, which proposition defendant agreed to, and three boxes of his goods, amounting in value to six hundred dollars, were added, with the understanding that they were to be sent to Pollard, Alabama, and that the parties were to share the profits. These goods, while being removed out of the State, are attached by the plaintiff. It is in proof that the defendant was indebted in New York three or four thousand dollars, and that when the attachment was levied he had in his store in Pensacola from eight to ten thousand dollars worth of goods, and that there was due and owing him about two thousand dollars in Pensacola.

On the other hand, it is also in evidence that about three weeks before the attachment defendant promised Albert Hyer that he would provide for the payment of certain notes held by him by making deposits of his daily sales with him, and that about this period "there were auction sales at his store on two or three nights," and on one occasion in the day time. The amount of goods thus sold does not appear. There were payments amounting to two hundred and fifty dollars made to Hyer by defendant, which were directed to be applied to rent account, and the defendant in his testimony states that the balance went to pay necessary daily expenses.

It is clear from what has been stated in the foregoing portion of this opinion, that the instructions asked for by plaintiff were properly refused. It is not seen how any state of facts would justify them. Any removal of goods or property, however small in amount or whatever is their character, which is made with the intent of avoiding the payment of debts, is within the mischief which it was the purpose of the statute to correct, and accepting the facts as they appear in testimony in this case, the

instruction of the court covering this point, as well as submitting the question of the fairness of the transaction under all the circumstances to the jury, was entirely proper. What has been said disposes of the first, third, and fourth errors assigned, and the second and fifth remain to be considered.

The second is that the court erred in permitting the introduction of evidence to show the value of the property retained by the defendant in this State.

There is no error here. Indeed, did it not appear to this court from a general review of this case that the jury had passed upon this fact, and had found that the amount of property being removed was very small, and that the property remaining in the jurisdiction was amply sufficient to more than satisfy the debt, and in their judgment there was no danger of loss of the debt by the removal, we would be inclined to direct a new trial; for it is the opinion of the court that in such a case as this, if the property remaining is not amply sufficient under all the circumstances of the case, then it is such removal as is within the statute, and this, too, independent of any question of intent. There must be no doubt of the solvency of the party.

Any other view would permit the debtor to remove all of his property beyond the jurisdiction, in the event he proved it was his purpose to remove it to a point where it could be made more available for the purpose of paying his debt, which cannot be.

The fifth assignment is that the court erred in overruling the motion for a new trial. The grounds for this motion are set out in the preceding portion of this opinion. What has been said disposes of all the grounds upon which this motion was based except the first, which is that the verdict of the jury was against the legal evidence.

All of the evidence admitted was proper, and while the facts appearing in the testimony are of such character as to create doubt as to the intent and purpose of defendant in this removal

of goods, yet this question being passed upon by the jury, such a case is not presented by this record as would justify this court in directing the verdict to be set aside.

It would have been proper in this case for the court to have extended its charge to other points than that of intent which were properly raised by the testimony, thus, for instance, the point as to the danger of loss of the debt by the removal, independent of the question of intent; such a charge being applicable to that evidence which related to the amount of goods being removed, the amount retained, and the solvency of the party. It is not perceived, however, that the omission to charge upon those facts resulted to the prejudice of the appellant. Besides, while it is true that if the court assumes to charge at all, it ought to charge on the whole law, yet it is settled that a party cannot, upon error, avail himself of any omission in this respect, unless he has called the matter to the attention of the court below by a prayer for an instruction covering the point. 9 Fla., 176; 2 Pet., 15.

The judgment is affirmed.

HART, J., dissented, and delivered the following opinion:

This is an action of assumpsit under our attachment law.

The affidavit was made under the statute approved December 20th, 1859, which provides: "That from and after the passage of this act, (the) writ of attachment now authorized by (the) statutes of this State to be issued where the debt or demand is due, shall in no case be issued unless the party applying for the same, or his agent or attorney, shall first make oath in writing before a justice of the peace or clerk of the circuit court, as is now provided by law, that the amount of the debt or sum demanded is actually due, and also that he or she has reason to believe the party from whom it is due will fraudulently part with his, her, or their property before judgment can be recovered against him, her, or them, (as the case may be,) or is

actually removing his, her, or their property out of the State of Florida, or about to remove it out of the State, or resides beyond the limits thereof, or is actually removing or about to remove out of the State, or absconds or conceals himself or herself, or is secreting his or her property, or fraudulently disposing of the same," and alleges that Nassitts is justly indebted to Haber & Co. in the sum of four hundred and four dollars and eighty-eight cents, which amount is actually due, and that the said William W. Nassitts is actually removing his property out of the State of Florida. The attachment bond was made, approved, and filed, and the writ was issued and executed by attaching fifteen boxes of assorted merchandise pointed out as the property of Nassitts, and by notifying Nassitts. The plaintiffs then filed their declaration, and afterwards the defendant filed two affidavits for dissolution of the attachment. The statute providing for dissolving attachments is as follows: " The courts respectively to which such attachments are returnable shall be always open for the purpose of hearing and deciding motions for dissolving such attachments, and in any such case, upon oath made and tendered to the court that the allegations in the plaintiff's affidavit are untrue, either as to the debt or sum demanded, or as to the special cause assigned, whatever it may be, for granting the attachment, then in every such case it shall be the duty of the court to hear evidence upon the issue so presented; and if, in the opinion of the court, the allegations in the plaintiff's affidavit are not sustained and proved to be true, the said attachment shall be dissolved. *Provided*, That if the party, defendant, shall demand the same, a jury shall be empannelled to try the issue joined as aforesaid." T. D. The affidavits of the defendant Nassitts alleged that "the allegations in the plaintiffs' affidavit as to the special cause assigned for the issuance of said attachment are untrue; that said defendant was not removing his property beyond the limits of the State of Florida as alleged in the said affidavit, but was only forwarding a few of his goods for sale in an adjoining State in the course of his

trade." Thereupon a jury was empannelled, evidence taken, the jury rendered a verdict for the defendant, and the court gave judgment dissolving the attachment. The bill of exceptions gives the evidence, the rulings of the court, and its charge to the jury.

It is not necessary for the purposes of this opinion to state the evidence in detail. The court, against the objections of the plaintiffs, admitted evidence of the *purpose or intent* of the defendant in removing his property, which was the only question raised in the case, and charged the jury as follows : ." If in this case you believe from the testimony that the defendant at the time of suing out the attachment was removing his property out of the State of Florida, you should find for the plaintiff unless you are further satisfied that it was not done with the intent of avoiding the payment of his debts. It will be sufficient on this issue for the plaintiffs to prove that the defendant was removing his property out of the State, but it will be incumbent on the defendant to show the fairness of the transaction, unless it should appear from the testimony adduced against him. It will be competent for you to consider all the facts proved before determining as to the intent of the defendant in the transaction, and if you believe that it was to avoid the payment of his debts, you should find for the plaintiffs. It is not necessary that the defendant should have been removing all his goods, but if the testimony satisfies you that he was removing any of them out of the State with such intent, you should find for the plaintiffs, for the plaintiffs would not be required in such a state of circumstances to wait until all the goods were removed or being removed. You should regard rather the intent of the party than the proportion the goods in question bear to the whole amount of the defendant's goods. It is competent for you to consider circumstantial testimony. It should be received with caution, but it is admissible, has always been such, and may rise so high in the scale of testimony as to generate full conviction. Its sufficiency consists in its .

capacity to satisfy the conscience and understanding of the jury. You will give to such testimony in this case the effect to which you think it entitled. If there is any discrepancy between the statements of the witnesses you should reconcile them if you can, but if you cannot do so you must decide for yourselves which you will believe, for you are the exclusive judges of the credibility of the witnesses."

The plaintiffs requested the court to charge the jury as follows:

First. If the jury believe the defendant was removing his property beyond the limits of the State they must find for the plaintiffs on this motion.

Second. If the jury believe the defendant was removing any portion of his property beyond the limits of the State they must find for the plaintiff on this motion. Which the court refused to do.

After verdict, the plaintiffs moved for a new trial on the following grounds:

First. The verdict of the jury was against the legal evidence in the case.

Second. The court erred in admitting evidence not pertinent to the issue and calculated to mislead the jury.

Third. The court erred in admitting evidence of the intention of the defendant on other points than that of removal of the property, viz.: as to whether his intention by such removal was to defraud his creditors or defeat them in the collection of their debts.

Fourth. That the court erred in the instructions given to the jury, and in refusing the instructions asked by plaintiffs' counsel.

The motion was overruled, and as by the judgment of the court the attachment was dissolved, the plaintiffs took their appeal.

The defendant proved good intentions on his part, and under

the rulings and charge, the jury had no alternative but to find the verdict for him. The issues required by that part of the act of 1859 which these plaintiffs invoked, and by the act for dissolving attachments, taken together, are only " as to the debt or sum demanded, and as to the special cause assigned." The latter is the point in this case, and it was correctly assigned. Does the statute authorize a departure from it, a side issue, a collateral question as to intent to be raised, by which the plaintiffs may be divested of their lien obtained by complying fully with all of its several stringent requirements ? I think not. The statute provides for cases in which creditors are about to be deprived of their lawful rights by acts accompanied by fraudulent intent, and also for some cases in which they may be deprived of them without such intent, and, indeed, with the very best of intentions. There is no room for construing the latter to mean the same as the former. The case of a non-resident, for example.

The affidavit of the defendant denied the truth of the special cause assigned in the plaintiffs' affidavit, and in the same sentence plainly showed that it was true, but that he, the defendant, had good intentions. This made no issue as to "the special cause *assigned*" as authorized by the statute, but suggested another issue not provided for in such case. He had not complied with the requirements of the statute for dissolving attachments, and had no cause in which to make a motion to dissolve. This he seemed to see, for twelve days afterwards, at said term, he filed his second affidavit, simply alleging that " the special cause assigned for the issuance of said attachment is untrue, and that said attachment ought to be dissolved." Under the statute, the " oath made and tendered to the court " by the defendant, must be not only " that the allegations in the plaintiffs' affidavit are untrue," but it must go farther, and allege, not mere matter of law, as that the attachment ought to be dissolved, but that it is " untrue either as to the debt or sum demanded, or as to the special cause assigned, whatever that

may be." Either as to the debt, as, for example, that it is not due, or as to the sum demanded, as, for example, that it does not amount to that sum, or as to the special cause assigned, as, for example, that he is not actually removing his property out of the State, but only to some other part of the State. At all events, the "issue" to be "presented" must be confined "to the debt or sum demanded, or the special cause assigned," and no other debt or sum or special cause except that which is "assigned" "in the plaintiff's affidavit" will answer. The first affidavit, still on file and constituting a part of the record of the cause, plainly showing the special cause assigned in the plaintiffs' affidavit to be true, the court should have refused to consider this second affidavit, and should have overruled the motion. For if the causes assigned were all true, there could be no room for dissolving the attachment.

In cases like this, where there are no pleadings but the affidavits, and no issues but what they contain, if the affidavits go outside of the law to present facts and issues not provided for by the statute, it is the duty of the court in its charge to the jury, or, if a jury has not been demanded, in its rulings to treat all such collateral allegations as nullities, and to prevent them from influencing the verdict or decision; hence, if the court rules otherwise, and no exception to that ruling appears to have been taken or noted at the moment, but that a charge embodying the law correctly was requested to be given to the jury and was refused, and that the point was again made upon motion for a new trial and overruled, and that that last ruling was excepted to and assigned upon appeal as error, the rule requiring facts not otherwise of record to be embodied in the bill of exceptions is not infringed. It does not appear that these affidavits of the defendant were objected to otherwise than substantially in instructions asked to be given by the court to the jury, which were refused, and in a motion for new trial, which was overruled, and in the assignment of errors; but as no other course is wholly practicable under these statutes

in such cases, that pursued must be held to be sufficient to enable this court to act upon errors in the said affidavits.

The defendant in his first affidavit had voluntarily estopped himself from making any issue of fact " as to the special cause assigned in the plaintiffs' affidavit," by thus clearly showing of record that the special cause assigned in the plaintiffs' affidavit was true in point of fact ; but he was seeking to present some other special cause, or some explanation of that which was assigned. He was not seeking to meet the issue required in the statute and " presented in the plaintiff's affidavit," but to evade it by alleging something about his removing only a part of his property, and about his doing it in the course of his trade. There is not the remotest suggestion of any such issue in the few words which the statute authorizes the creditor to use. If the defendant would not in his affidavit join in " the issue tendered in the plaintiffs' affidavit," the statute gave him no right to demand a jury, for there could be no other lawful issue of fact to try.

A jury was empanelled to try something that the creditor was nowhere informed in the statute he would have to meet. He was not required to know that the property being removed and which he attached actually *in transitu* was only a part of the debtor's property, nor that he had any left behind, nor with what purpose or intent the debtor was removing it. How could he *know* the intention, even if told ? Thus wholly uninformed of what character of proof the defendant would be allowed to adduce, thrown out into the broad and uncertain field of intentions, of which the part of the statute which he was authorized to invoke, and which he had invoked, had furnished him no notice, he was obliged to come before the court, he *might* suppose to prove what the defendant had already in the record conclusively proven for him, and to disprove whatever the defendant could by testimony urge as to his own intentions. He had complied with every requirement of the statute, and knew that he could easily prove all that it required of him, and may very properly

have felt that he was in no danger of losing that suit nor of having costs and damages to pay ; he could see in the statutes that the defendant might replevy, in which event he would have a bond and approved sureties in place of the property, but he could not see in the statutes *providing for his case,* that the defendant might destroy his attachment, and subject him to costs and damages, by proving good intentions.

Language cannot be more plain than that of the statute now under consideration : " actually removing his property out of the State." This is all. I can see no sound reason for a construction that cannot be made without at least virtually adding the words *with fraudulent intent.* That would be to introduce a different question, and one already fully legislated upon and provided for. Arguments drawn from ideas and opinions concerning the legislative and commercial policy and interests of the State, and the abstract rights of debtor and creditor, belong rather to the legislator than to the judge, and have properly no place in judicial opinions or decisions. If the language of a statute is itself doubtful or contrary to common reason there is room for the application of the wise rules of the common law for construing statutes. There is nothing doubtful nor unreasonable in this statute ; especially is there no sound reason for construing it so as to add to it something about the *good intentions* with which a debtor may carry his property out of the State and lose it. If justice has its losses to trade, commerce, and credit, its compensations far exceed them. If the honest debtor restricts his business operations or his pleasures until he pays his debt, being due, the rewards of his wisdom will be ample.

Counsel for the appellee asks, Can it be seriously insisted that these words in the act must be taken without any limitation whatever ? Will any removal of property, however insignificant, casual or honest, come within the meaning of the law ? Would the law in question apply to the removal of merchandise out of the State in the regular course of trade, to the shipment of articles manufactured here for a market abroad, and where

alone such articles would command a reasonable price ? Would it be held to apply to a casual removal of the horses and carriage of a citizen upon a visit to a neighboring State ? In answer it may be asked, why not ? Why should not a delinquent debtor be expected to restrict himself in his business affairs and his pleasures in order to do justice to his creditor and pay his debt, even by sacrifices if necessary ? He is in breach of his contract. The debt is due. The creditor may in every respect be as needy as he, indeed may be suffering, and is certainly as much entitled to the *aid of the law.* Ordinarily the commercial creditor desirous of retaining the custom of his debtor does not appeal to the law until he sees danger of the loss of his claim, nor the poorer creditor until compelled by his necessities ; and when he sees the very danger which the law recognizes, and invites his attention to, and he invokes its aid, he little suspects that, without any fault on his part, he may *thereby* become involved in still greater difficulties. If the debtor is actually removing his property out of the State, the creditor is not barred of his remedy by his debtor's intentions. They may be good, but the statute places no reliance upon them. The debtor himself cannot rely upon them ; every day and hour they may be thwarted with the best intentions, his ship may be sunk or other property lost, and the creditor wholly lose his just claim to the security.

Counsel for the appellants wisely argue that " the debtor cannot justly complain that the arm of the law constrains summary proceedings for obligations he has neglected or failed to meet, and the security for which he is lessening by transfer of property to another State." * * * " Now did not the legislature by its last amendment of the statute manifestly intend to remove all doubt as to the line, fixing it definitely and restrictively upon the simple act of removing the property ? To permit a more enlarged scope places the right of the creditor in hopeless confusion and uncertainty. He could never know when the writ was allowed him, and even if the debtor were removing his whole property, if the intent is to enter into the gist of the act there

might be proof to show 'the fairness of the transaction' which * * * would be fatal to the creditor."

I have stated more than I would but for an intimation that this opinion is not in accordance with the adjudications of eminent jurists of the highest authority in some other States. I well know and fully recognize the danger of doing wrong by departing from the beaten track, and never will fail to yield much to the wisdom of their interpretations of the law. If any of them have decided differently under like statutes and similar circumstances, nothing but the most solemn convictions of conscientious duty could induce me to depart from the line of interpretation marked out by them. After some search, however, I have not found what appeared to me to be precisely such a case, or one clearly in point, and so do not yet feel obliged to admit the accuracy of the intimation.

After much careful and anxious consideration of the case, and of the rules and principles of law involved in it, fully recognizing, and I trust appreciating, the high qualifications of the learned judge who presided in the circuit court, with cordial respect for his well-known abilities as a jurist, my mind reluctantly concludes that the appeal was well taken, the assignment of errors should be sustained, the judgment of the circuit court reversed, and the cause remanded to that court for correct proceedings.